# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TRACY BETTENDORF, *et al.* | : |
| Plaintiffs, | : Case No. 2:17-cv-681 |
| | : |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : |
| CHESTER LYTLE, *et al.*, | : Magistrate Judge Vascura |
| | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (ECF No. 5). For the reasons set forth below, Defendants' Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

Defendants Chester Lytle, Jeremy Tuttle, and Peter Shaw are employees of the Chillicothe Police Department ("CPD"). (ECF No. 1 at ¶ 3). Defendant Keith Washburn is the Chief of the CPD. (ECF No. 1). Plaintiffs Tracy Bettendorf and Carey Ackley lived together at 192 Yaples Orchard, Chillicothe, Ohio and owned and operated an all-terrain vehicle sales and service business, Midwest Motorplex, located at 98 Consumer Center Drive, Chillicothe, Ohio. (*Id.* at ¶¶ 9-10).

On January 15, 2016, the CPD sought search warrants for both Ms. Bettendorf and Mr. Ackley's personal residence and Midwest Motoplex. (ECF Nos. 1-1; 1-2). The affidavits supporting the search warrants contain the following relevant facts:

- Charles Immell contacted Sergeant Tuttle and stated that he paid Midwest Motoplex, specifically Mr. Ackley, $1220.00 for an extended warranty on a 2014 Polaris RZR 1000 XP EPS UV that Mr. Ackley identified as a new vehicle. Mr.

Immell stated that he needed a repair on the vehicle and attempted to use the warranty for the repair and found out that the warranty contract was not valid. Mr. Immell then contacted the warranty company, Preferred Warranties, Inc., and discovered that his contract was not valid with that company. He then contacted Mr. Ackley and was given another warranty contract number. Mr. Immell contacted Preferred Warranties, Inc. again and was told that this warranty contract was assigned to a previous customer from Midwest Motoplex and was no longer a valid warranty contract. Sergeant Tuttle contacted Grace Keuhn from Preferred Warranties, Inc. who told him that neither of these warranty contracts were valid for Mr. Immell and Mr. Immell needed to contact Midwest Motoplex regarding his payment for these warranties. Mr. Immell has not received any reimbursement from Midwest Motoplex for this false warranty. Detective Lytle contacted Mr. Immell who told him that he attempted to get a new vehicle warranty through Polaris but was told that the vehicle had previously been titled in Tennessee.

- Detective Lytle was contacted by Dennis Ortiz, Risk management/Asset Recovery Manager for Strategic Funding Source, Inc., New York, New York. Mr. Ortiz stated that Midwest Motoplex, specifically Mr. Ackley, had applied for funding through his company in June of 2012. Mr. Ortiz stated that Midwest Motoplex secured a loan in the amount of $177,500 and that the company was about to default on the loan, which is why he was investigating it. Mr. Ortiz supplied Detective Lytle with documents, which included a 2013 tax return. Mr. Ortiz identified the return as being fraudulent. Detective Lytle inspected the tax

documents and found that the Form 1040 did not appear to be an original IRS tax document, finding that the 2013 at the top of the document was in an altered font different than the one used by the IRS for these documents. Detective Lytle also found that throughout the document there appeared to be alterations in types of font as well as size of font changing throughout. Mr. Ortiz stated that Mr. Ackley had emailed and faxed these documents to his business in order to secure the loan. Mr. Ortiz stated that he conducted all business with Mr. Ackley over the telephone, facsimile or computer, and that Mr. Ackley would have been at his residence or at the business when the transactions occurred.

- Detective Lytle was contacted by Mr. Ortiz again, who stated that Mr. Ackley had applied for an additional loan using a third-party company, Mission Funding. Mr. Ortiz stated that Mission Funding uses Strategic Funding Source, Inc. as one of its entities to supply loan monies to companies. Mr. Ortiz supplied Detective Lytle with Mr. Ackley's application through Mission Funding indicating that Mr. Ackley had used a different social security number on this application. Detective Lytle confirmed that the social security number on the Mission Funding application was different than Mr. Ackley's social security number, which was used on the initial loan he secured through Strategic Funding Source, Inc. In checking Mr. Ackley's credit report it was found that both social security numbers were reported to belong to Mr. Ackley. The social security number used on the Mission Funding application is a Colorado social security number and was issued between 1930 and 1951. Detective Lytle has not been able to identify the

- individual that the social security number belonged to, but Mr. Ortiz stated that it belongs to a deceased female in Colorado.
- Detective Lytle was contacted by Connie Jayne who stated that she ordered an independent suspension kit valued at $34.99 from Midwest Motoplex on January 7, 2016. Ms. Jayne stated that this part was supposed to be in on January 12, 2016, but she attempted to call Midwest Motoplex on that day and again on January 13, 2016 and received no answer at the business. Ms. Jayne stated that she left messages, but no one returned her call. She stated that in the afternoon of January 13, 2016, she went to Midwest Motoplex and found that the business was locked and appeared to be out of business. Ms. Jayne stated that she paid for the part she ordered and believes Midwest Motoplex took the money with no intention of ever ordering the part, since they went out of business.
- On January 14, 2016, Detective Lytle went to Midwest Motoplex at 12:00 p.m. and found that the business was locked and appeared to be out of business.

(ECF No. 1-3; ECF No. 5 at Ex. A). Based on the affidavits presented by Detective Lyle that contained these supporting facts, Judge John Street of the Chillicothe Municipal Court issued a search warrant for Ms. Bettendorf and Mr. Ackley's residence and a search warrant for Midwest Motoplex. (ECF Nos. 1-1; 1-2).

In the early morning of January 15, 2016, the CPD executed the search warrants. (ECF No. 1 at ¶ 11). Six to ten police vehicles surrounded the residence, approximately a dozen officers forcibly entered the home, and the occupants of the home were detained. (*Id.*). The officers conducted the search of the residence and the business, seizing several items from each location, including computers, paperwork, and the Point of Sale ("POS") system used to conduct

all business transactions for Midwest Motoplex. (ECF Nos. 1 at ¶ 22; 1-4; 1-5). Plaintiffs contend that there was paperwork documenting and disproving the factual allegations regarding the $1220 warranty issued to Mr. Immell, the use of the social security number of a deceased woman in Colorado, and the failure to deliver a $34.99 prepaid special order vehicle part to Ms. Jayne, but the officers left the paperwork on a desk in the office area. (ECF No. 1 at ¶¶ 15, 18). With regards to the social security number, Plaintiffs state that the number was a valid and legitimate Employer Identification Number (EIN) issued by the Internal Revenue Service ("IRS") to Mr. Ackley, and attached documentation to that effect to the Complaint. (ECF No. 1-6).

After the searches and seizures, Midwest Motoplex was forced to halt operations as a result of its POS system being seized. (ECF No. 1 at ¶¶ 22, 28). Ms. Bettendorf and Mr. Ackley's counsel wrote eight letters to Detective Lytle over the next several months seeking return of the seized property and discussing the harm the seizure has had on the business. (*Id.* at ¶ 23; ECF Nos. 10-1 – 10-8). No indictment or charges have ever been filed against Ms. Bettendorf or Mr. Ackley, but none of their seized property has been returned. (ECF No. 1 at ¶¶ 24-26). In addition to the harm caused by Midwest Motoplex going out of business, Ms. Bettendorf and Mr. Ackley contend that they have suffered irreparable harm to their character reputation in the Chillicothe community and have had to move out of Ohio. (*Id* at ¶¶ 27, 28).

### B. Procedural Background

On August 3, 2017, Ms. Bettendorf and Mr. Ackley initiated this lawsuit against Officers Lytle, Tuttle, and Shaw, Chief Washburn, the CPD, and the City of Chillicothe alleging unlawful search and seizure in violation of 42 U.S.C. § 1983. (ECF No. 1). On December 1, 2017,

Defendants filed their Motion for Judgment on the Pleadings. (ECF No. 5). The Motion is fully briefed and ripe for decision.

## II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion"). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted). Additionally, the Court "may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F.

App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

III. **ANALYSIS**

Ms. Bettendorf and Mr. Ackley bring their claim against Defendants under 42 U.S.C. § 1983. To ultimately prevail, Plaintiffs must show: (1) the deprivation of rights secured by the Constitution or federal statues (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Defendants do not dispute that the officers were persons acting under the color of state law. The only questions that remain are whether the officers deprived Plaintiffs of a constitutional right, and, if so, whether the officers are nevertheless shielded from liability by qualified immunity.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. Amend. IV. The "baseline for reasonableness of a search or seizure in the home is the presence of a warrant." *Illinois v. Rodriguez*, 497 U.S. 177, 190, 110 S. Ct. 2793, 2802, 111 L. Ed. 2d 148 (1990) (Marshall, J., dissenting). Indeed, the "presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done . . . so that an objective mind might weigh the need to invade that privacy in order to enforce the law." *McDonald v. United States*, 335 U.S. 451, 455, 69 S. Ct. 191, 193, 93 L. Ed. 153 (1948). Thus, "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' *unless* it has been authorized by a valid search warrant." *Groh v. Ramirez*, 540 U.S. 551, 560, 124 S. Ct. 1284, 1291, 157 L. Ed. 2d 1068 (2004) (internal quotations omitted) (emphasis added).

It is undisputed that the officers obtained search warrants to search Ms. Bettendorf and Mr. Ackley's property and business on January 15, 2016. Thus, the search "violated plaintiffs' rights only if the search warrant executed . . . was not supported by probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998).[1] Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Greene v. Reeves,* 80 F.3d 1101, 1106 (6th Cir.1996). In determining whether the warrants are supported by probable cause, this Court "pays great deference to the issuing [judge's] determination as to probable cause and recognizes that such a finding should not be set aside unless arbitrarily exercised." *Mays*, 134 F.3d at 814.

When the Fourth Amendment requires "a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Franks v. Delaware*, 438 U.S. 154, 164–65, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667 (1978) (emphasis in original) (internal quotations omitted). This does not mean "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* It "surely" requires, however, that "the information put forth is believed or appropriately accepted by the affiant as true." *Id.* A "party may only challenge the veracity of an affidavit if that party can make a substantial preliminary showing that a false statement knowingly and intentionally or with reckless

---

[1] The Fourth Amendment would also be violated if the warrant was not supported by a sworn affidavit or did not describe with particularity the place of the search or the evidence sought. U.S. CONST. Amend. IV ("[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *Groh*, 540 U.S. 557. Plaintiffs do not argue that the warrants were defective in these respects, however, and thus they are not addressed here.

8

disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement was necessary for a finding of probable cause." *Mays*, 134 F.3d at 815 (quoting *Franks*, 438 U.S. at 155-56 (1978)).

Defendants argue that the warrant was based on probable cause, as found by Judge Street, and thus Ms. Bettendorf and Mr. Ackley were not deprived of their constitutional rights. (ECF No. 5 at 7). Ms. Bettendorf and Mr. Ackley argue that there were false and material misstatements in the warrants, and that the officers knew the facts to be untrue and unsupported, in violation of the Fourth Amendment. (ECF No. 10 at 5-6). As Defendants point out, however, Ms. Bettendorf and Mr. Ackley have not sufficiently pled facts to support their arguments. Plaintiffs must allege that a false statement in the affidavits were made knowingly and intentionally or with reckless disregard for the truth, and that the allegedly false statement was necessary for a finding of probable cause. *Franks*, 438 U.S. at 155-56 (1978). This they have not done.

While Plaintiffs' Complaint states that there is "paperwork documenting and disproving the allegations" in the affidavits, the Complaint does not sufficiently plead any supporting facts to back the contention that the factual statements used to grant the warrant are false. (*See* ECF No. 1 at ¶ 18). The only supporting fact pled is that the allegedly false social security number used by Mr. Ackley is in reality an EIN issued by the IRS. (ECF No. 1 at ¶¶ 19-20). Merely because it turned out that Mr. Ackley had an EIN that matched the allegedly false social security number, however, does not mean that there was not probable cause to issue a warrant, based on the facts known at the time—including that a third party reported the use of a false social security number and the detective's credit history search showed that Mr. Ackley used two social security numbers. There is no allegation in the Complaint that Mr. Ortiz did not actually tell

Detective Lytle that Mr. Ackley used a false social security number, or that Mr. Ackley's credit report did not actually return two social security numbers, one of which did not belong to him. Further, there is no allegation that Detective Lytle knew the allegedly false social security number was an EIN. Even if Detective Lytle's failure to determine that the number was an EIN constitutes "reckless disregard," (a finding that the Court need not make), the other facts alleged in the affidavits are sufficient to support probable cause. The facts as stated in the affidavits—and not challenged in the Complaint—indicate that a tax document was altered and fraudulently submitted to obtain a loan,[2] a customer reported that he was given two invalid warranties and incorrectly told that a used vehicle he purchased was new, and another customer reported that she never received a part she paid for and believed the business had closed down with no intention of sending her the part. (ECF No. 1-3; ECF No. 5 at Ex. A).

Even if the Plaintiffs adequately pled that the facts contained in the affidavits were false, the Complaint does not sufficiently plead that any of the individual officers *knew* the factual allegations used to obtain the warrants were false or that the statements were made with reckless disregard for the truth. (*See* ECF No. 1 at ¶ 18). The closest the Complaint comes to asserting that the Defendants knew or should have known the allegations were false is the following statement: "The lack of factual support for the allegations contained in the affidavit to the search warrant, as well as the material misrepresentations made therein, were immediately brought to the Defendants' attention." (*Id.* at ¶ 21). There are no facts alleged, however, to show which of the Defendants made the material misrepresentations, which facts outlined in the affidavits were

---

[2] Interestingly, the Complaint does not even mention this factual allegation. *See* (ECF No. 1 at ¶ 15) (listing the "three factual allegations . . . offered by CPD in support of the requested warrants" as "(1) failure to issue an extended warranty worth $1220 on a vehicle, (2) using the social security number of deceased woman living in Colorado, and (3) failure to deliver a $34.99 prepaid special order vehicle part.").

material misrepresentations, or whether the material misrepresentations were necessary for a finding of probable cause. The statement is merely conclusory, and therefore the Complaint fails to state a claim upon which relief can be granted. *See Meeks v. Larsen*, 611 F. App'x 277, 284 (6th Cir. 2015) (finding plaintiffs fell "far short of their obligation to present well pleaded, non-conclusory allegations" when complaint "repeatedly assert[ed] that Haug 'omitted materially important information' and 'deliberately provided false information' to Leslie Larsen and Sandra Larsen, and that Sandra Larsen deliberately or recklessly 'asserted unfounded and speculative opinions and conclusions' in the warrant affidavit" but complaint did not "identify any statements in the warrant affidavit that are alleged to be false or materially incomplete" and "made no effort beyond making conclusory statements to establish that, even if [a paragraph in the affidavit] were false, it was deliberately or recklessly so, or that it was material to the finding of probable cause"); *Humes v. City of Blue Ash*, No. 1:12-CV-960, 2013 WL 2318538, at *5 (S.D. Ohio May 28, 2013) (finding Plaintiffs' Complaint failed to state a plausible Fourth Amendment claim because it did "not allege any facts to support the naked assertion that Detective Gerhardt fabricated the existence of the confidential informant" to receive the warrant).[3]

In addition to the § 1983 claims against Officers Lytle, Tuttle, and Shaw, Ms. Bettendorf and Mr. Ackley bring supervisory claims against Chief Washburn for allegedly condoning and acquiescing to repeated constitutional violations, and claims against CPD and the City of Chillicothe for inadequate training, supervision, investigation, and discipline of officers (ECF No. 1 at ¶¶ 40, 45, 47). Because no constitutional violation by the officers have been

---

[3] Because the Court finds that Ms. Bettendorf and Mr. Ackley have not sufficiently alleged that their constitutional rights were violated, the Court need not reach the issue of qualified immunity. *See May*, 134 F. 3d at 813 (stating that the issue of qualified immunity becomes moot if the court determines that the detective had probable cause to obtain a search warrant and plaintiffs' 1983 claim fails).

established, these Defendants cannot be held liable under § 1983. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (dismissing claims against Sheriff and City because no constitutional violation by the individual defendants was established).

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that the warrants were supported by probable cause, and Ms. Bettendorf and Mr. Ackey's Complaint fails to sufficiently plead that any of the officers knowingly made false statements or made statements with reckless disregard for the truth.  Defendants' Motion for Judgment on the Pleadings (ECF No. 5) is therefore **GRANTED** and this matter is hereby **DISMISSED**.

**IT IS SO ORDERED**.

        s/ Algenon L. Marbley
        **ALGENON L. MARBLEY**
        **UNITED STATES DISTRICT JUDGE**

**Dated: September 14, 2018**